UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
JAN 1 8 2017
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

BILLY GUYTON, et al.,

    Plaintiffs,

v.

LEGACY PRESSURE CONTROL, et al.

    Defendants.

Case No: 5:15-cv-1075-RCL

**MEMORANDUM OPINION**

**I.  INTRODUCTION**

Plaintiffs Billy Guyton and David Brown bring this action under the Fair Labor Standards Act ("FLSA") alleging that their former employer, Legacy Pressure Control, and its president, Isha M. Myrick, and vice president, Robert D. Myrick, violated Section 7 of the FLSA, 29 U.S.C. §§ 207, 215(a)(2), by failing to pay overtime wages for work exceeding forty hours per week. Both plaintiffs and defendants have moved for summary judgment. *See* Defs.' Mot. Sum. J., ECF No. 38; Pls.' Mot. Sum. J., ECF No. 40. The Court finds that genuine disputes of material fact exist with regard to the Highly Compensated Executive ("HCE") exemption of the FLSA, whether defendants willfully violated the FLSA, and defendants Robert Myrick and Isha Myrick's status as employers under the FLSA. The Court will grant partial summary judgment in favor of plaintiffs with respect to several of defendants' affirmative defenses, but will otherwise deny summary judgment to both parties.

## II. BACKGROUND

Defendant Legacy Pressure Control ("Legacy") is an oilfield services company that provides wireline pressure control, pressure pumping, and test-torque services. Defendant Isha Myrick is the president of Legacy, and her son, defendant Robert Myrick is the vice president. Plaintiffs formerly worked as Operators for Legacy between 2013 and 2015. The nature of plaintiffs' jobs as operators is a matter of contention between the parties. The Court can deduce, however, that Operators perform their duties on site in the oilfields, standing on an equipment platform known as a "skid," and are responsible for maintaining oilfield pressure control. Operators either worked as part of a two man crew, switching shifts every twelve hours, or as part of a four man crew where each Operator was accompanied by a Helper for twelve hour shifts. During the course of these shifts Operators often spent up to several hours of down time on site.

Defendants have moved for summary judgment on three grounds: 1) plaintiffs are exempt from the FLSA overtime regulations under the HCE exemption; 2) a two year statute of limitations applies because plaintiffs have failed to demonstrate defendants' willfulness; and 3) Isha Myrick does not qualify as an "employer" under the FLSA and should be dismissed. Plaintiffs have moved for summary judgment on the following grounds: 1) Robert and Isha Myrick are both "employers"; 2) no FLSA exemptions are applicable to either plaintiff; and 3) defendants have failed to provide evidence supporting their affirmative defenses.

## III. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if he evidence is such that a reasonable jury could return a verdict for

the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact "is material if its resolution could affect the outcome of the action." *Thompson v. Goetzmann*, 337 F.3d 489, 502 (5th Cir. 2003). The Court must view the facts and any inferences to be drawn from them in the light most favorable to the non-movant, *id.*, but it may not make credibility determinations or weigh the evidence. *Austin v. Will-Burt Co.*, 361 F.3d 862, 866 (5th Cir. 2004).

### B. FLSA Exemptions

"Under the FLSA, employers must pay overtime compensation to covered employees who work more than forty hours a week." *Cleveland v. City of Elmendorf*, 388 F.3d 522, 526 (5th Cir. 2004), *citing* 29 U.S.C. 207(a)(1). The FLSA includes, however, several exemptions for specific categories of employees, including the HCE exemption, under which employees are not entitled to overtime wages. The HCE exemption provides that "[a]n employee with total annual compensation of at least $100,000 is deemed exempt . . . if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative, or professional employee." 29 C.F.R. § 541.601(a).[1] To perform a duty "customarily and regularly" means to perform it with "a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701.

Executive employee duties include 1) "management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;" 2) "customarily and regularly direct[ing] the work of two or more other employees;" and 3) having "the authority to hire or fire other employees or [being an employee] whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of

---

[1] As of December 1, 2016—after the relevant activity in this case occurred and after the pending motions were filed—this regulation was changed to read that an employee must receive total annual compensation of at least $134,004 to qualify for exemption. *See* 29 C.F.R. § 541.601(b).

3

other employees are given particular weight." 29 C.F.R. § 541.100(a)(2)–(4). Administrative employee duties include 1) "perform[ing] office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;" and 2) "exercis[ing] . . . discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(2)–(3). A highly compensated employee need not perform all of the job duties of an executive or administrative employee; he or she merely needs to perform any one or more of the duties. *See* 29 C.F.R. § 541.601(c). Thus an employee qualifies for the HCE exemption if he meets the salary threshold and regularly and customarily performs one of the above listed job duties.

The HCE exemption "applies only to employees whose primary duty includes performing office or non-manual work," sometimes known as "blue collar" work. 29 C.F.R. § 541.601(d). If an employee's primary duty is manual labor, the HCE exemption does not apply, regardless of how much they are paid. *Id.* "Primary duty" means "the principal, main, major or most important duty that the employee performs," considering "all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a). While the time spent performing certain work is useful in determining an employee's primary duty, it is not the sole determining factor. 29 C.F.R. § 541.700(b). Manual labor includes "work involving repetitive operations with [a worker's] hands, physical skill and energy," the skills and knowledge for performance of which is gained "through apprenticeships and on-the-job training, not through the prolonged course of specialized intellectual instruction required for exempt learned professional employees." 29 C.F.R. § 541.3(a).

### C. Willfulness

FLSA claims, such as those raised here, are generally subject to a two year statute of limitations, but causes of action arising out of willful violations of the Act are subject to a three year statute of limitations. 29 U.S.C. § 255. An employer's violation of the FLSA is willful if it "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute," for example when "an employer actually knew its pay structure violated the FLSA or ignored complaints that were brought to its attention." *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349, 360 (5th Cir. 2015) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132–33 (1988)). However, "[m]ere knowledge of the FLSA and its potential applicability does not suffice, nor does conduct that is merely negligent or unreasonable." *Id.*

### D. Definition of "Employer"

Under the FLSA, an "'[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). To determine whether a person qualifies as an "employer," the Fifth Circuit uses the "economic reality" test, which considers whether the alleged employer "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012) (internal quotation marks omitted). Merely holding the position as an officer or shareholder of a company does not qualify an individual as an employer under the FLSA where operational control does not exist. *See id.* at 355–56.

### IV. ANALYSIS

For the following reasons, the Court holds that genuine disputes of material fact exist with regard to 1) whether plaintiffs qualify for the HCE exemption; 2) whether defendants willfully

5

violated the FLSA; 3) whether Robert or Isha Myrick qualify as employers; and 4) defendants' good faith defense. The Court will deny summary judgment on these issues. The Court finds that because defendants' did not address several of their other affirmative defenses or the Motor Carrier Act exemption, the Court will grant summary judgment to plaintiffs on these issues.

> A. **Genuine disputes of material fact exist regarding whether plaintiffs qualify for the HCE exemption**

The parties here dispute whether plaintiffs qualify for the HCE exemption, and both sides have moved for summary judgment on this issue. Defendants argue that plaintiffs met the $100,000 threshold and that they performed three different executive or administrative duties: 1) plaintiffs trained Helpers to become Operators, directed their work, and provided feedback regarding Helpers' work and whether they should be promoted, *cf.* 29 C.F.R. § 541.102 (describing the "management" duties of executive employees); 2) plaintiffs' suggestions and recommendations as to the promotion of Helpers to Operators was given particular weight, *cf.* 29 C.F.R. § 541.100(a)(4); and 3) plaintiffs' exercised significant discretion and judgment while on site, *cf.* 29 C.F.R. § 541.200(a)(3). Defendants further argue that plaintiffs qualify for the HCE exemption because they are not manual laborers. They argue that there is no evidence that plaintiffs' primary duty was manual labor, as manual labor only constituted approximately 10% of plaintiffs' job duties.

Plaintiffs counter that the HCE exemption does not apply because they are manual laborers whose duties were to perform pressure control tasks, including "monitoring, managing, and overseeing pressure changes at the well head of a fracking site while wirelines companies perform wireline runs in connection with fracking operations," who "worked outdoors with boots, hard hats, and coveralls," and who used tools such as wrenches and hammers. Plaintiffs contend that it does not matter whether they performed these tasks 10% of the time, as they spent most time

waiting in the field for their next manual task to begin. In addition, plaintiffs argue that plaintiffs' work was not directly related to the management or general business operations of the company, that they did not exercise discretion and independent judgment with respect to matters of significance, and their recommendations with regard to the promotion of Helpers were not given particular weight.

Courts in this Circuit have considered whether various types of oil field operators or inspectors qualify as manual or blue collar workers. As these types of employees are not specifically addressed in the FLSA regulations, as opposed to, for example, carpenters, electricians, and mechanics, *see* 29 C.F.R. § 541.601(d), the determination of whether such employees are manual laborers turns largely on the facts of each case. *See generally McPherson v. LEAM Drilling Sys., LLC*, No. 4:14-CV-02361, 2015 WL 1470554, at *12 (S.D. Tex. Mar. 30, 2015) (discussing conditional class certification of "MWDs [Measuring While Drilling] and other oilfield service workers *falling on the border* of the executive exemption") (emphasis added). Other courts have come to different conclusions when faced with the question of whether oil field operators, or other similar employees, qualify as manual laborers. *Compare, e.g., Ferrara v. 4JLJ, LLC*, 150 F. Supp. 3d 813 (S.D. Tex. 2016) (denying summary judgment in a case where a Frac Supervisor contended that "primary job duties included a significant amount of manual labor in the field producing the product of the company," but the company argued that he "seldom, if ever, performed manual labor and instead directed others to do so"), *and Pye v. Oil States Energy Servs.*, No. 5:15-cv-678, Docket No. 33 (W.D. Tex. 2017) (adopting a Report and Recommendation, docket No. 28, finding that a field service operator's primary duties—which included loading equipment, traveling, and setting up, operating, and taking down equipment—were the performance of manual work), *with McPherson*, 2015 WL 1470554, at *12 (analyzing similar

cases and finding that MWDs were not manual laborers where "manual labor occupied only a small fraction of their time, . . . [o]perating the MWD tool is not traditional manual labor but is performed automatically from a makeshift office, . . . [and] [t]he limited manual labor performed during installation and removal of the MWD tool does not appear to be enough by itself to satisfy the blue collar exclusion").

The Court finds that summary judgment is not appropriate for either party here because genuine disputes of material fact exist with regard to whether plaintiffs qualify as manual laborers. Defendants maintain that plaintiffs' primary duty was controlling and maintaining the pressure of grease injected into the wells so as to prevent blowouts, accomplished by visually monitoring gauges and turning a knob to adjust grease levels. They argue that other tasks considered manual labor—"connecting hoses to the skid; filling up the grease unit on a tote; tightening nuts with a wrench, torque wrench, or hammer; moving hoses to keep them from getting tangled on the well head; using hand pumps; torque testing; moving grease around with a forklift or bringing it off the truck; opening and closing the tool trap; and going up in a man lift"—only constituted 10% of plaintiffs' job duties. Defendants argue that the other 90% of plaintiffs' jobs duties, including visually monitoring the gauges and turning a knob, did not qualify as manual labor.

Plaintiffs have introduced evidence showing that they performed their job duties out in an oilfield, and that their primary duties included operating pressure control equipment, monitoring gauges, supervising the setup of equipment, and rigging jobs up and down. Plaintiffs' evidence shows that they worked outdoors with boots, hard hats, coveralls, and tools, and they contend that the work is "hot, dangerous, and sweaty." With regard to defendants' argument that plaintiffs only spent 10% of their time performing manual labor, plaintiffs respond that they spent the rest of their

time simply waiting to perform manual tasks (their primary duties), and that waiting cannot be considered a primary duty.

Given the aforementioned arguments and evidence, the Court finds that genuine disputes of material fact exist regarding several key issues. First the parties dispute what exactly plaintiffs' primary duties were as *operators*; plaintiffs only concede that their primary duties during the skid operation process—as opposed to their primary duties as a whole—was monitoring gauges and controlling the amount of grease being injecting into the well to prevent blowouts. Furthermore, disputes exist regarding whether that duty should be considered "manual labor" at all. In addition, the parties dispute the importance of other tasks performed by plaintiffs, such as connecting and moving hoses, filling up the grease unit, tightening nuts, breaking down the guns and subs, using hand pumps, torque testing, moving grease, opening and closing the tool trap, and going up the man lift. Finally, they disagree on how much time was spent performing manual labor; defendants say only 10%, but plaintiffs claim that this is a mischaracterization of the testimony and that plaintiffs were engaged to wait for the majority of their time on site.

Therefore, because neither Congress nor the Fifth Circuit have definitively determined whether oil field operators are manual laborers, and because courts within this Circuit have reached different conclusions, and given the genuine disputes of fact present in this case, the Court finds that summary judgment is not appropriate. In order to decide these issues, the Court would need to weigh the evidence. Such an action is improper at the summary judgment stage. *See Austin*, 361 F.3d at 866. The Court will deny summary judgment on the question of whether the HCE exemption to the FLSA applies to plaintiffs. *See Ferrara v. 4JLJ, LLC*, 150 F. Supp. 3d 813, 820 (S.D. Tex. 2016) (finding that genuine disputes of material fact precluded summary judgment on

the question of the HCE exemption when the parties disputed, among other things, whether the employee's primary duties constituted manual labor).

**B.      Genuine disputes of material fact exist regarding defendants' willfulness**

The parties similarly dispute whether defendants willfully violated the FLSA, and therefore whether a two or three year statute of limitations should apply.  Defendants claim that plaintiffs have failed to present evidence showing that defendants actually knew they were violating the FLSA or that plaintiffs complained about their compensation structure or lack of overtime pay, and that defendants ignored such complaints.  They argue that the evidence instead shows that defendants acted upon a reasonable belief that plaintiffs were exempt from overtime requirements, and that after questions arose, defendants consulted with legal counsel.  Plaintiffs dispute that defendants acted upon a reasonable belief that plaintiffs were exempt from overtime, pointing to evidence showing that defendants made overtime payments to some operators, that they received complaints regarding overtime from plaintiff Guyton, and that they changed their policies to pay operators overtime.

Again, the Court finds that summary judgment is inappropriate on the question of willfulness due to the existence of genuine disputes of material fact.  Whether defendants knew they were violating the FLSA or recklessly disregarded the FLSA requirements is hotly contested by the parties, and both have introduced evidence on this question.  Questions remain regarding whether plaintiffs raised complaints about overtime pay or compensation structure, and whether defendants subsequently ignored such complaints or dealt with them properly and in accordance with the FLSA.  Questions also remain regarding whether defendants actually consulted with legal counsel, and the result of such consultation.  Given these genuine disputes of material fact, the Court will deny summary judgment on the issue of willfulness.  *See Wellman v. Grand Isle Shipyard, Inc.*, No. CIV.A. 14-831, 2015 WL 2169786, at *3–4 (E.D. La. May 8, 2015).

### C. Genuine disputes of material fact exist regarding Isha Myrick's and Robert Myrick's status as employers

Finally, defendants contend that Isha Myrick should be dismissed from this case as she does not qualify as an employer under the FLSA. They argue that "Isha Myrick's sole involvement in Plaintiffs' employment was management of their employment records and processing of their paychecks," which does not show she exerted operating control over plaintiffs under the economic reality test. In contrast, plaintiffs move for summary judgment that Isha Myrick does qualify as an employer, arguing that in addition to maintaining employment records, Isha Myrick also actually performed the other three functions considered as part of the economic reality test. She had the power to hire and fire employees, she was responsible for the method of payment to plaintiffs because she figured and ran the checks and handled payroll reductions, and she was involved in operation control of the company as the president and HR administrator, handling incoming faxes, insurance, and workers' compensation coverage and claims. Plaintiffs have also moved for summary judgment on the question of whether Robert Myrick qualifies as an employer of the plaintiffs. Defendants respond that even though some evidence exists showing that Robert Myrick controlled aspects of plaintiffs' employment, the Court should deny summary judgment because questions exist regarding Mr. Myrick's operational control over the plaintiffs' employment.

The Court finds that genuine disputes of material fact preclude summary judgment on this issue of whether Isha or Robert Myrick qualify as employers of plaintiffs. Both sides have introduced evidence tending to show that the Myricks either did or did not perform the functions considered under the economic reality test. Again, the Court would need to weigh the evidence to determine whether either Isha or Robert Myrick exercised operating control over plaintiffs and

therefore should be considered employers under the FLSA. The Court will therefore deny summary judgment to both parties on this issue.

### D. Defendants have waived most of their affirmative defenses

In their Amended Answer, ECF No. 22, defendants raise thirteen affirmative defenses. Plaintiffs have moved for summary judgment on the first, fourth, fifth, seventh, tenth, eleventh, twelfth, and thirteenth defenses. Because defendants have failed to address or dispute the on the first, fourth, seventh, tenth, eleventh, twelfth, and thirteenth defenses, the Court will grant summary judgment in favor of plaintiffs on these issues. *See Bollschweiler v. El Paso Elec. Co.*, 166 F. Supp. 3d 808, 815–16 (W.D. Tex. 2016). With regard to defendants' fifth defense, that the compensation structure was made in good faith and that defendants had reasonable grounds for believing that they were not in violation of the FLSA, the Court finds that summary judgment is not appropriate for the same reasons it is not appropriate on the question of willfulness, discussed above. The Court will deny summary judgment.

### E. Defendants have waived their Motor Carrier Act argument

In their Amended Answer, defendants also claim that plaintiffs' claims are barred by the Motor Carrier Act ("MCA") exemption. Plaintiffs have moved for summary judgment that the MCA does not apply in this case. Because defendants have failed to dispute or address this issue, the Court will grant partial summary judgment in favor of plaintiffs on the MCA issue.

## V. CONCLUSION

In conclusion, the Court finds that genuine disputes of material fact largely preclude summary judgment in favor of either party. The Court will, however, grant summary judgment to plaintiffs on the issues of the MCA exemption and defendants' first, fourth, seventh, tenth, eleventh, twelfth, and thirteenth affirmative defenses. It will deny summary judgment on the issues of whether the HCE exemption applies to plaintiffs, whether defendants acted willfully—and

therefore whether a two or three year statute of limitations applies, and whether Robert or Isha Myrick qualify as employers under the FLSA. A separate Order accompanies this Memorandum Opinion.

Date: January 18, 2017

Royce C. Lamberth
United States District Judge